IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CLARENCE HILL,**

      **Plaintiff,**

                            ***CAPITAL***

**vs.**                                **CASE NO. 4:06-CV-032-SPM**

**JAMES McDONOUGH and**
**CHARLIE CRIST,**

      **Defendants.**

_____/

**ORDER DISMISSING COMPLAINT**

**THIS CAUSE** comes before the Court upon remands from the United States Supreme Court[1] and the Eleventh Circuit Court of Appeals[2] for decision on plaintiff Clarence Hill's Verified Complaint for Declaratory and Injunctive Relief (doc. 2) originally filed with this Court on January 20, 2006, and his Amended Complaint filed September 1, 2006 (doc. 37). The Court has considered these pleadings as well as the responses and the motion to dismiss filed by Defendants (docs. 6 and 34). Hill is a death-sentenced inmate currently scheduled for execution on September 20, 2006. For the reasons set forth below, the Court finds the motion to dismiss must be granted.

---

[1] Hill v. McDonough, 126 S.Ct. 2096 (Jun. 12, 2006).

[2] Hill v. McDonough, No. 06-10621 (11th Cir. Aug. 29, 2006).

**BACKGROUND:**

Four days before his execution was scheduled to occur, Hill brought this action under 42 U.S.C. § 1983 alleging that Defendants, acting in their official capacities under Florida law, will cause unnecessary pain in the execution of his sentence of death. Hill claims that his execution will violate the Eighth and Fourteenth Amendments of the United States Constitution, which prohibit cruel and unusual punishment. He requests an injunction barring Defendants from executing him in the manner they intend. He claims that the particular protocol used by the Florida Department of Corrections ("DOC") in carrying out their executions by lethal injection (three injections, including an anesthetic, a paralytic agent, and potassium chloride to stop the heart) "creates a foreseeable risk of the gratuitous and unnecessary infliction of pain on a person being executed." (Doc. 2 at 5).

This Court, on January 21, 2006, dismissed the motion for lack of jurisdiction, citing the Eleventh Circuit's decision in Robinson v. Crosby, 358 F.3d 1281 (11th Cir. 2004), which construed appellant's action under 42 U.S.C. § 1983 as a successive habeas corpus petition. Although the decision was affirmed by the Eleventh Circuit, Hill v. Crosby, 437 F.3d 1084 (2006), the United States Supreme Court reversed and remanded, holding that because Hill was not challenging lethal injection as a general matter, but only the method of injection,

Page 3 of 10

he could proceed under §1983.  Hill v. McDonough, 126 S. Ct. 2096 (Jun. 12, 2006).

Hill does not contest the legality of capital punishment as a whole, nor does he even assert that lethal injection *per se* is unconstitutional.  The narrow issue presented by Hill's complaint is whether the specific lethal injection protocol utilized by DOC, with its particular sequence, amount and combination of chemicals, violates the Eighth Amendment's prohibition against cruel and unusual punishment.

**FACTS:**

Hill bases his original and amended complaints on the affidavit of Dr. David A. Lubarsky (doc. 2, Attachment B) who co-authored a study published in The Lancet, "Inadequate Anaesthesia in Lethal Injection for Execution," Vol. 365, The Lancet 1412-14 (April 16, 2005) (doc. 2, Attachment C).[3]  The Lancet study explained that a typical lethal injection protocol consists of administering a

---

[3]The article states as follows:

Lethal injection usually consists of sequential administration of sodium thiopental for anaesthesia, pancuronium bromide to induce paralysis, and finally potassium chloride to cause death. (Cite omitted).  Without anaesthesia, the condemned person would experience asphyxiation, a severe burning sensation, massive muscle cramping, and finally cardiac arrest.  Thus, adequate anaesthesia is necessary both to mitigate the suffering of the condemned and to preserve public opinion that lethal injection is a near-painless death.

The Lancet at 1412.

succession of three drugs to effect the inmate's death. The first one, sodium pentothal, acts as an anesthetic, while the second, pancuronium bromide, paralyzes the body and prevents the inmate from moving or otherwise showing pain or discomfort. The final chemical, potassium chloride, is what stops the heart and actually causes death.

The study found, in the jurisdictions examined, that at least some of the time, insufficient doses of anesthesia were administered, enabling the inmate to experience the feelings of being suffocated and going into cardiac arrest, yet be unable to move or alert anyone to the problem.[4]

While Florida's procedure was not examined in the study, Hill argues that Florida's practice is "substantially similar" and thus poses the same risk to inmates. He requests a preliminary injunction temporarily prohibiting his execution as well as a permanent injunction forever barring DOC from using its current lethal injection method.

In his amended complaint, Hill also raises for the first time before this Court his concerns with regard to the formulation and adoption of Florida's lethal

---

[4] The above conclusion is based on research and data from post-mortem toxicological tests conducted on condemned inmates in Arizona, Georgia, North Carolina and South Carolina, from which the researchers found that the concentrations of thiopental (sodium pentothal) were lower than that required for surgery in 88% of the executed inmates and that 43% of the executed inmates had concentrations of thiopental consistent with awareness because they had an insufficient amount of sodium pentothal in their bloodstream to provide adequate anesthesia. (Doc. 2-1 at 7-8). The article suggests that "some inmates might experience awareness and pain during execution." The Lancet at 1412.

injection procedures. He contends, for example, that there is an absence of standardized procedures for the administration of the chemicals and unqualified personnel involved in the procedure as well as insufficient guidelines upon which these personnel can rely if they are required to exercise their discretion during the process of the execution. Additionally, he contends that Florida's protocol has no plan in place if the inmate requires medical assistance during the execution. (See Doc. 37 at 4).[5]

**ANALYSIS:**

Before the Court is Hill's request for a preliminary temporary injunction, *i.e.,* a stay of execution, prohibiting Defendants from executing him until this Court has had the opportunity to fully consider his complaint without haste. The Court's analysis of this issue is guided by the strong equitable presumption against granting a stay in this case. See Gomez v. United States Dist. Court for N. Dist. of Cal., 503 U.S. 653, 654, 112 S. Ct. 1652, 1653, 118 L. Ed. 2d 293 (1992)(per curiam) and Nelson v. Campbell, 541 U.S. 637, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004). As stressed by the Court in Nelson:

> A stay is an equitable remedy, and "[e]quity must take into consideration

---

[5] These same concerns were addressed in Sims. See Sims, 754 So. 2d at 666 n.18. The Florida Supreme Court examined them collectively, stating, "Because these subissues concern the adequacy and sufficiency of the DOC's written protocol, we have treated these seven subissues together." Id. The court went on to find that DOC's procedures for administering lethal injection "do not violate the Eighth Amendment's prohibition against cruel and unusual punishment." Id. at 668.

> the State's strong interest in proceeding with its judgment and . . . attempt[s] at manipulation." [Gomez, 503 U.S. at 654, 112 S. Ct. at 1653]. Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim.  Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

Id. at 541 U.S. at 649-50, 124 S. Ct. at 2126 (internal citations omitted).  The Court in Hill v. McDonough, 126 S. Ct. at 2104, reiterated this point:  "We state again, as we did in Nelson, that a stay of execution is an equitable remedy.  It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue influence from the federal courts."

While the Lancet study itself may be relatively new, the factual basis of Hill's claim (that the doses of the anesthetic sodium pentothal may be insufficient, thus permitting those injected to experience the feelings of being suffocated and having a heart attack, but unable to express their pain by virtue of being paralyzed by pancuronium), has been raised and disposed of in other cases. See Brown v. Crawford, 408 F.3d 1027 (8th Cir. 2005); Bieghler v. State, 839 N.E.2d 691 (Ind. 2005).  This Court also held in its previous order dated January 21, 2006 that "[p]laintiff has made no showing that he could not have discovered these underlying predicates through the exercise of due diligence."  (Doc. 10 at

4).

Moreover, Florida's lethal injection methods were subjected to a full evidentiary hearing in 2000 in Sims v. State, 754 So. 2d 657 (Fla. 2000), and Hill could have challenged the procedure after the Sims decision was rendered. The procedural history of this case is set out more fully in Hill v. State, 921 So.2d 579 (Fla. 2006). Hill was convicted of first-degree murder and sentenced to death in May of 1983; his conviction became final some five years later. See Hill v. Florida, 485 U.S. 993 (1988).

On November 29, 2005, Governor Bush signed a death warrant scheduling Hill's sentence of death to be carried out on January 24, 2006. On December 15, 2005, Hill filed a successive motion for postconviction relief in state court raising for the first time the same argument with regard to lethal injection that he raises here. The trial court denied this motion and the Florida Supreme Court affirmed this denial. Hill then filed the instant complaint pursuant to 42 U.S.C. § 1983 on January 20, 2006, just four days prior to the date of his execution.

Hill has offered no reason for his delay in bringing a § 1983 action until just days before his scheduled execution. Therefore, under the authority of Gomez, Nelson and Hill, this Court finds that Hill has delayed unnecessarily in bringing his § 1983 challenge of Florida's lethal injection procedure, and his

complaint must be dismissed. See also In re Hicks, 375 F.3d 1237, 1241 (11th Cir. 2004); Harris v. Johnson, 376 F.3d 414, 418 (5th Cir. 2004)("By waiting as long as he did, Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."); White v. Johnson, 429 F.3d 572, 574 (5th Cir. 2005)("White has been on death row for more than six years, and only now, with his execution imminent, has decided to challenge a procedure for lethal injection that the State has been using for his entire stay on death row . . . . White has no excuse for delaying his claim until the eleventh hour, and he cannot argue that 'he was unaware of the State's intention to execute him by injecting the three chemicals he now challenges.'" (citing Harris, supra, 376 F.3d at 417)); White v. Livingston, 126 S. Ct. 601 (2005)(denial of stay of execution); Patton v. Jones, 2006 WL 2468312 (10th Cir. Aug. 25, 2006); Reese v. Livingston, 453 F. 3d 289, 291 (5th Cir. June 20, 2006)(court denied request for stay as untimely)("Reese's late claim is no different than the late claim in White [v. Johnson], and we are not persuaded that Hill has undermined the decisions of this Court insisting upon a timely filing or that until Hill the suit could not have been brought.") [6]

    This Court finds persuasive the following comments made by the Reese

---

[6] The Supreme Court also recognized in Nelson that "the mere fact that an inmate states a cognizable § 1983 claim does not warrant the entry of a stay as a matter of right." Nelson, 541 U.S. at 649, 124 S. Ct. at 2125-26.

court in denying the request for equitable relief as untimely:

> Timely filing would have afforded the opportunity for developing facts and considered resolution of the merits of the repeated charges being leveled against this method of execution. Testimony in open court can cast away shadows and allow a principled decision of the merit of the assertions of all concerned–rather than forcing courts to choose between speculative assertions and "just trust me" responses. As we read Hill, a plaintiff cannot wait until a stay must be granted to enable him to develop facts and take the case to trial–not when there is no satisfactory explanation for the delay.

Reese, 453 F.3d at 291.

In addition to the Lancet study, Hill contends in his amended complaint that "new and critical" information has surfaced since his original complaint. This information is recent case law from other federal jurisdictions in which evidentiary hearings were held and discovery conducted with regard to the various states' lethal injection protocols and procedures. Hill cites Taylor v. Crawford, 2006 WL 1779035 (W.D. Mo. Jun. 26, 2006), Morales v. Hickman, 438 F.3d 926 (9th Cir. Feb. 19, 2006), and Cooey v. Taft, 430 F.Supp.2d 702 (Apr. 28, 2006). These cases are not binding on this Court, and they can be distinguished significantly from Hill's case. In each of these cases, the inmate brought his § 1983 action either prior to having an execution date set or in a timely enough manner that the court was able to adequately develop a factual record.[7] The courts in Cooey and

---

[7]The Court notes that in Cooey v. Taft, 430 F. Supp. 2d 702 (Apr. 28, 2006), one of the plaintiffs was allowed to intervene in the § 1983 action prior to his execution date being set; thus the district court granted an injunction staying his execution once scheduled. The court specifically found that the plaintiff had not unnecessarily delayed in bringing an action under §

Morales specifically found that the inmates were diligent in filing their § 1983 actions;[8] thus, those courts were not bound by the precedent which this Court must follow.  Hill's unnecessary delay in bringing this action forecloses the relief which he seeks.

Accordingly, it is

**ORDERED** and **ADJUDGED** as follows:

1. The amended motion to dismiss (doc. 34) is hereby *granted*.

2. The "Amended Verified Complaint for Declaratory and Injunctive Relief" (doc. 37) is hereby *dismissed*.

3. No stay of execution shall issue in this case.

**DONE** and **ORDERED** this first day of September, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge

---

1983. The court stated, ". . . Plaintiff [Jeffrey] Hill was not within days of his execution.  He did not sit on his laurels.  He did not wait until the State had set or even requested an execution date." See id. at 706.

[8]See id.  Also, the Ninth Circuit Court of Appeals in Morales v. Hickman, 438 F.3d 926, 930 (Feb. 19, 2006), stated "Morales' diligence allowed the court to more thoroughly consider the relevant legal and factual issues that ultimately bore on its conclusion."